James H. Hooper, Appellant, v. General Electric X-Ray Corporation, Appellee.

**Gen. No. 38,125.**

Opinion filed December 30, 1935.

JAMES H. HOOPER, *pro se.*

ESSINGTON & McKIBBIN and WALTER E. BEEBE, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

May 19, 1929, plaintiff, James H. Hooper, filed his amended bill of complaint in the circuit court, alleging that June 16, 1916, he was the owner of 71.8 shares of stock in the Scheidel-Western X-Ray Co., an Illinois corporation; that the certificates representing this stock had been issued by mistake on old blanks printed for the Scheidel-Western X-Ray Coil Co., the former name of the Scheidel-Western X-Ray Co., its name having been changed; that Scheidel-Western X-Ray Co. gave due notice, called a meeting of its stockholders, who agreed upon a plan for the sale of the assets of the corporation to Victor Electric Corporation of the State of New York; that the special meeting of the stockholders of the Illinois corporation which authorized this sale was held in Chicago June 16, 1916, and the resolution authorizing its officers and directors to sell all the assets according to an agreement with the Herbert S. Blake Co., bearing date September 25, 1915, was unanimously carried.

The amended bill further alleged that June 25, 1917, the Scheidel-Western X-Ray Co., by its president, notified plaintiff that the registrar of the Victor Electric Corporation was about ready to issue stock in the new corporation to take the place of that which complainant held in the Scheidel-Western X-Ray Co. The notice stated that the records showed plaintiff to be the holder of 71.8 shares of said stock, and that he would receive in the new corporation 19½ shares of first preferred stock, 15 shares of second preferred stock and 60 shares of common stock, and that arrangements had been made with the Central Trust Company of Illinois to accept the old Scheidel-Western certificates of stock,

and upon receipt thereof to turn over to complainant the above mentioned number of shares of stock in the Victor Electric Corporation.

It further appears that September 29, 1920, the Victor Electric Corporation of New York merged with another New York corporation, forming the Victor X-Ray Corporation, which was named defendant in the amended complaint, and under the terms of the consolidation agreement stockholders of the Victor Electric Corporation, upon surrender of their stock, were to receive certain shares of stock in the Victor X-Ray Corporation.

The amended bill further avers that at all times since June 16, 1916, until May 19, 1928, Hooper had in his possession one certificate for 50 shares and one certificate for 21.8 shares of the capital stock of Scheidel-Western X-Ray Co., and that these were the same certificates which had been theretofore issued to plaintiff by the corporation. In another amendment, filed January 11, 1930, it is averred that Scheidel-Western X-Ray Co. delivered the stock certificates received from Victor Electric Corporation to the Central Trust Company as its agent, and directed Central Trust Company to deliver these stock certificates to the respective persons and for the respective amounts to which the stockholders of the Scheidel-Western X-Ray Co. were entitled, as heretofore set forth.

The amended bill further alleged that about one week prior to August 1, 1916, plaintiff secured from the defendant Gash a loan of $300, and pledged to him as security therefor his said certificate for 21.8 shares, which was to be held by Gash as collateral for the loan; that Gash, in violation of his agreement, surrendered it and caused the Scheidel-Western X-Ray Co. to reissue to him in his own name a new certificate; that on the day of its issue Hooper paid Gash the $300 loan in full and demanded the return of the collateral,

whereupon Gash indorsed this last reissued certificate, which was signed by the president of the corporation and by Gash, as its secretary, and handed it to plaintiff in lieu of said collateral.

It is further alleged that there were issued in the name of Gash stock certificates representing 54 shares of the first preferred stock, 41 shares of the second preferred stock, and 164 shares of the common stock of Victor Electric Corporation; that Gash appeared on the stock books of Scheidel-Western X-Ray Co. as the holder of 136.8 shares of the capital stock of said company, in which were included 21.8 shares of said stock owned by plaintiff and pledged to Gash and which were issued to him on August 1, 1916; that Scheidel-Western X-Ray Co. delivered this certificate to Central Trust Company, as its agent, and directed its said agent to deliver the stock certificates to the respective persons in whose names said stock certificates were issued, but only upon the surrender by said persons to Central Trust Company of their equivalent stock certificates of the Scheidel-Western X-Ray Co.; that Scheidel-Western X-Ray Co. directed its agent, the Central Trust Company, to deliver 54 shares of first preferred stock, 41 shares of second preferred stock and 164 shares of common stock of Victor Electric Corporation to Gash only upon the surrender by him to the Central Trust Company of stock certificates representing 136.8 shares of stock of Scheidel-Western X-Ray Co., but that Central Trust Company violated its instructions and delivered to Gash the stock of Victor Electric Corporation upon the surrender of certificates representing only 115 shares of stock of Scheidel-Western X-Ray Co.; that Central Trust Company violated its directions, under which it acted as agent and as escrowe for hire, by delivering to Gash 9½ shares of the first preferred, 6½ shares of the second preferred, and 26 shares of common of the Victor X-Ray Corpo-

ration, without compelling him to return to it for the Scheidel-Western X-Ray Co. and the Victor X-Ray Corporation the outstanding certificate owned by complainant of 21.8 shares of the stock of the Scheidel-Western X-Ray Co.; whereas said escrowe should have delivered the said 9½, 6½ and 26 shares, respectively, to plaintiff.

The amended bill further averred that Victor X-Ray Corporation has since Gash received the 9½, 6½ and 26 shares, respectively, paid him $3,050 in dividends thereon and has redeemed them by paying to Gash therefor $6,872.50, all of which are alleged to be the property of plaintiff and were received by Gash as trustee for plaintiff; that Gash, having been on August 1, 1916, and for several years prior thereto and thereafter, the secretary and at times president of the Scheidel-Western X-Ray Co., and during all of said time a trustee of Scheidel-Western X-Ray Co., his knowledge that plaintiff owned these 21.8 shares was in law the knowledge of Scheidel-Western X-Ray Co., and because of the consolidations heretofore mentioned, was also the knowledge of the Victor X-Ray Corporation.

The amended bill further averred that the redemption moneys and dividends so received by Gash from the 21.8 shares, or from the stock into which the 21.8 shares were exchanged, were invested by him to improve or to pay off incumbrances upon certain real estate in Wilmette, Illinois, and in the purchase of $3,000 par value of stock of the Twentieth Century Life Co.

The amended bill prays that defendants may be decreed to render an accounting to plaintiff of all dividends in stock and proceeds thereof which have accrued and come into their possession, and that the real estate and the stock in the Twentieth Century Life Co. be impressed with a lien in favor of plaintiff; that

Victor X-Ray Corporation may also be decreed to render an accounting to plaintiff for all dividends earned and declared by its predecessor in interest, the Victor Electric Corporation, on 28½ shares of its first preferred stock, 21½ shares of its second preferred stock, and 86 shares of its common stock, for the period between June 16, 1916, and September 29, 1920; that said defendant be decreed to account to plaintiff for all dividends earned and declared by it on 1405 shares of its class "A" preferred stock and 91.2 shares of its class "B" preferred stock, from September 29, 1920, until the time of the filing of the original complaint; that the court may decree that the certificate of stock for 21.8 shares then held by plaintiff be reformed and decreed to be 21.8 shares of the capital stock of the Scheidel-Western X-Ray Co., and that said defendant be decreed and required to issue to plaintiff certificates for 41.5 shares of class "A" and 28.125 shares of class "B" stock in said defendant corporation.

Demurrers interposed to the foregoing amended bill of complaint were sustained, and the bill dismissed. Thereafter Hooper prosecuted an appeal to the Appellate Court. The cause was docketed under No. 34,606, and January 26, 1931, the Appellate Court affirmed the decree of the circuit court (unpublished opinion by Mr. Justice Matchett, 259 Ill. App. 668 [Abst.]). Hooper thereupon filed his petition for a writ of certiorari to the Supreme Court of Illinois, which was on April 22, 1931, denied.

Thereafter, August 17, 1931, Hooper filed a second bill of complaint in the circuit court which made substantially the same averments as the original and amended complaint hereinbefore outlined, differing in this respect only,—that General X-Ray Corporation, successor to the Victor X-Ray Corporation, was made sole defendant. A. D. Gash and Central Trust Company were not joined as parties defendant therein. To

this second complaint defendant filed a general and special demurrer averring that the complaint on its face showed a prior adjudication and setting forth in detail the decisions, adverse to Hooper, in the Appellate and Supreme Courts.

In reviewing the sufficiency of the first bill of complaint the Appellate Court held the same to be defective on grounds of multifariousness and also because it appeared from the face of the bill that Hooper was guilty of gross laches. That portion of the opinion which discusses the question of laches reads as follows:

"So far as the Victor X-Ray Corp. is concerned, we think also that the bill shows upon its face that complainant is guilty of gross laches, which is a complete bar to the relief demanded. The transaction upon which this suit is based took place on June 16, 1916, and this bill of complaint was filed on May 19, 1929. The bills show that during all this time Hooper had full knowledge of the facts, or that if he did not have full knowledge he could have learned all the facts upon slight inquiry. He was obligated to make such inquiry. He knew all this time that the record of the corporations in question showed Gash to be the owner of 21.8 shares of stock which he now claims. He kept the certificate issued in the name of Gash in his possession for 13 years. He permitted Gash during that time to receive all the benefits incident to such record ownership. By his bill he now seeks to avoid the consequences of his own negligence and to impose upon the Victor X-Ray Corp. (which so far as the record shows never had any knowledge even of his existence) a liability for the money he permitted to be paid to defendant Gash. Upon the clearest principles, he is guilty of laches which bars his recovery. That equity does not permit a complainant in such a situation to recover has been decided in cases so numerous that it is unnecessary to cite them."

In filing the second proceeding notwithstanding the adverse decisions of two reviewing courts Hooper was, of course, fully aware that the subject matter of his two complaints was identical, for the second complaint recites "that on January 21, 1929, he filed his bill practically to the same effect and for the same prayer as contained herein, except that he joined Central Trust Company and A. D. Gash as additional defendants and the separate allegations as to facts and relief against them," and he avers that the several special demurrers "alleging that said bill was multifarious" were sustained "for that reason" and that the Appellate Court affirmed the decree of the circuit court "for the same reason." He does not, however, allude to that part of the Appellate Court opinion hereinbefore set forth which unequivocally holds that he was "guilty of gross laches" as an additional reason for sustaining the decree of the circuit court dismissing the first complaint. The decree from which this appeal is prosecuted recites the former Appellate Court opinion and the denial of certiorari by the Supreme Court, and specifically finds that the former proceeding was dismissed on ground of laches. Yet Hooper did not set forth in his abstract the decree from which he appeals, but left it for defendant to supply the omission in its supplemental abstract. Hooper evidently filed the second complaint upon the theory that the omission of Gash and Central Trust Company as defendants would obviate the question of multifariousness, in respect to which he concedes the first bill to have been defective, but he disregards the fact that the reviewing court also held it subject to demurrer on ground of laches, which appear in the second complaint as well as in the first.

It is obvious that there was an identity of parties and subject matter in the two proceedings, and that the dismissal of the first complaint was a complete adjudication of Hooper's rights. (*Pratt v. Griffin,* 223 Ill.

349; *Knobloch v. Mueller,* 123 Ill. 554.) The question of *res adjudicata* was properly raised by demurrer. (*Tinker v. Babcock,* 204 Ill. 571; *Ferriman v. Gillespie,* 250 Ill. 369.)

For the reasons stated the decree of the circuit court sustaining the general and special demurrers of defendant to the second complaint and dismissing same is affirmed.

*Affirmed.*

SCANLAN, P. J., and SULLIVAN, J., concur.